### STAFFORD v. STOVALL et al.

No. 13444—Opinion Filed Feb. 10, 1925.

Rehearing Denied April 14, 1925.

1. **Descent and Distribution—Minor Decedent's Parents not Living Together—Statute Construed.**

Under section 11301, article 4, chapter 93, Comp. Stat. 1921, if the deceased, being a minor left no issue, the estate must go to the parents equally if living together; if not living together, to the parent having had the care of said deceased minor.

2. **Same—Parent Having "Care" of Minor.**

Held, that the word "care," as used in the statute, requires that the parent in whose behalf its discriminatory and exclusive benefit is asserted, must be shown to have borne the entire burden of parental duty toward the minor at the time of the minor's death and during substantially the full period of the separation of the parents, to be entitled to such exclusive inheritance.

3. **Same—Finding in Favor of Father—Sufficiency of Evidence.**

Record examined, and held, that finding of trial court that facts in instant cause show such burden to have been borne by the father of the minor, and that he is entitled to the exclusive inheritance, is reasonably supported by the evidence, and is not contrary to the clear weight of the evidence.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Cleveland County; Frank Mathews, Assigned Judge.

Action between Maud Stafford (formerly Stovall) and P. J. Stovall et al. From the judgment, the former appeals. Affirmed.

Everest, Vaught & Brewer, for plaintiff in error.

Blanton, Osborn & Curtis, for defendants in error.

Opinion by LYONS, C. J. Leslie Stovall, a minor, died leaving no issue, but leaving surviving him a father, W. W. Stovall, and a mother, Maud Stafford, formerly Maud Stovall. At the time of the death of the said minor the parents were not living together.

It is the contention of W. W. Stovall, the father of said minor, that he is the sole heir as parent having had the care of said minor within the meaning of section 11301, article 4, chapter 93, Comp. Stat. 1921, which reads as follows:

"If there be no issue, nor husband nor wife, nor father nor mother, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation; if the deceased, being a minor, leave no issue, the estate must go to the parents equally if living together, if not living together, to the parent having had the care of said deceased minor."

It is the contention of the mother of said deceased minor that under the testimony in the cause said W. W. Stovall is not within the terms of the statute, and that the estate of said deceased minor goes in equal shares to his parents, and that she therefore takes an undivided one-half interest.

The section of the statute above quoted has received consideration from this court in two decisions: Bruce v. McIntosh, 57 Okla. 774, 159 Pac. 261, and Alberty v. Alberty, 72 Okla. 237, 180 Pac. 370.

In the case of Bruce v. McIntosh, supra, the court said.

"We think the word 'care' as used in this

section of the statute, requires that the parent in whose behalf its discriminatory and exclusive benefit is asserted must be shown to have borne practically the entire burden of parental duty towards the minor including maintenance and such other expenses as such duty requires, at the time of the minor's death and during substantially the full period of such separation of parents, to be entitled to such exclusive inheritance. Kelly v. Jefferis, 3 Pennewill, 286, 50 Atl. 215; Christy v. Pullman, 17 Ill. 59."

In the case of Alberty v. Alberty, supra, the court held:

"But it appears from the record that the deceased son was 18 years of age at the time of his death, that the parents had lived together as man and wife, jointly supporting and caring for their children up to about 21 months before the son's death, at which time they separated and lived apart about a year before the decree of divorce was granted. During this year the son lived with his father; the mother lived away from home; the father stayed at home and kept all the children. After the decree of divorce the mother came back home and the father left and the deceased son lived with his mother until his death, which was a little over nine months after she came back home.

"After hearing all the testimony the court divided the property equally between the parents. Evidently this decree was based on the conclusion, that the parents living together as man and wife until the boy was 16 years of age, had jointly supported and cared for him, and that after the separation they had each contributed about equally to his support and care. and we are not inclined to question the correctness of the court's conclusion in this regard.

"It will be observed that under the provision of the above statute the property of the deceased minor descends 'to the parent having had care of said deceased minor.' The court evidently concluded that both parents had had the care of the minor since they had ceased to live together. and that therefore each was entitled to an equal share in the estate under the provisions of the second subdivision of section 8418, Rev. Laws 1910, which provides:

"'If the decedent leave no issue, the estate goes one-half to the surviving husband or wife, and the remaining one-half to the decedent's father or mother, or if he left both father and mother, to them in equal shares.'"

It is plain, therefore, that the word "care" as used in the statute requires that the parent in whose behalf its discriminatory and exclusive benefit is asserted must be shown to have borne practically the entire burden of parental duty toward the minor, including maintenance and such other expenses as such duty requires, at the time of the minor's death and during substantially the full period of such separation of parents to be entitled to such exclusive inheritance.

In the instant controversy the learned trial judge has held that the facts in this cause brought the father within the foregoing rule, and that he was entitled to take as sole heir.

It is contended by the appellant, Maud Stafford, formerly Maud Stovall, that this ruling is contrary to the clear weight of the evidence, and that the trial court should have found that appellant was also an heir.

In the case of Bruce v. McIntosh, supra, the judgment was affirmed on the ground that there was evidence reasonably tending to support the same. The court said:

"The judgment was for the defendant; and there being evidence reasonably tending to support the same, in that all the evidence shows such separation and Rosa McIntosh testifies unequivocally to such exclusive care of the minor notwithstanding Greeley McIntosh and several other witnesses contradicted her in respect to whether Greeley McIntosh contributed to the support of the minor during the period of such separation, the judgment should be affirmed. See Board of County Com'rs of Woodward Co. v. Thyfault, 43 Okla. 82, 141 Pac. 409; Alfred v. St. Louis I. M. & S. Ry. Co., 42 Okla. 4, 140 Pac. 415; Elwell v. Purcell, 42 Okla. 467, 140 Pac. 412."

It would be seen from the foregoing that in that case the court took the view that the controversy was a law action, and that if the finding of the trial court was reasonably sustained by the evidence it should be affirmed.

In the case of Alberty v. Alberty, supra, the second paragraph of the syllabus is as follows:

"Where a minor dies leaving estate and no issue, and both parents survive him, but are not living together, it is a question of fact to be determined from the evidence as to which parent has had the care of such minor during their separation; and, where the testimony is conflicting, the finding of fact by the trial court will not be disturbed by this court, unless it is clearly against the weight of the evidence."

—which indicates that in that cause the appellate court weighed the evidence and approved the finding of the trial court.

Assuming, without deciding, that it is proper in this case for the court to weigh the evidence, we proceed to examine the testimony to determine whether the finding

of the trial court is clearly against the weight of the evidence.

It appears that Maud Stafford and W. W. Stovall were married and lived together as husband and wife when J. Leslie Stovall was born. Some time thereafter the parents were temporarily separated and the father of the child went to Galveston, got the child and brought him back to Lexington, Okla., and secured him a home with the paternal grandparents. At this time the child was three years of age. Thereafter the husband and wife resumed marital relations for a short time but were unable to agree and were divorced at Ardmore, Indian Territory, about the year 1902.

The mother never regained possession of the child and apparently never sought to do so, although she testified that the court decree awarded her the custody of the child. The decree itself was not introduced in evidence, and the father denied the claim that such decree awarded the custody of the child to the mother. In any event the child never lived with the mother after the age of three years, but lived at the paternal grandfather's home with its father. The father testifies that "he had the child at home with his parents and made that his home" after the separation. The father testifies further that he looked after the child, saw that he was kept in school, bought him considerable clothes, and paid his doctor bills when he was there, but that he was not at home all the time.

It further appears that the paternal grandmother died in 1908, and that thereafter J. Leslie Stovall and his father, W. W. Stovall, made their home together on a farm in the Chickasaw country. At this time the father took his son to Wayne and put him in school, paid his board and tuition, and bought him clothes. After that time J. Leslie Stovall attended school in Oklahoma City, contributing by his own efforts to his own support, receiving some assistance from his father, and also receiving assistance from his paternal grandfather. (During the life of the paternal grandmother J. Leslie Stovall received some support from her). In 1913 J. Leslie Stovall became ill with meningitis while employed at the Morris Packing Plant. He was ill for 47 days during which time his father was in constant attendance upon him, remaining with him and furnishing doctors and nurses for him.

It is conceded that the child's mother contributed nothing towards his maintenance after he became three years of age, except the sending at one time of two or three baby waists, according to the mother's testimony.

We think that the testimony in this case discloses that the mother had no care or custody of this child after he was three years old and contributed nothing to his support; the mother apparently completely lost touch with her son, and so far as the evidence shows was not in correspondence with him, and apparently maintained no bonds with him. The father found a home for his child with the paternal grandparents. made some contribution at all times toward his support, always took an interest in him, exercised care and custody of him, was interested in his education, looked after him in his last illness, and was at his bedside when he died.

We are not unmindful of the fact that the paternal grandparents contributed to the support of the child, but we think that this fact is not a sufficient circumstance to defeat the finding of the court that the father had the care and custody contemplated by the statute.

The father's care and custody was certainly exclusive in its relation to the mother, and it was only natural that he should have secured a home for his child at the paternal abode.

We think, therefore, that under the decisions of this court it is our duty to approve the finding of the learned trial court, since we cannot say that it is not reasonably supported by the evidence, or that it is clearly against the weight of the evidence. Indeed we take the view that the judgment of the trial court is in strict accord with the law and the evidence and meets the ends of justice.

The decision of the trial court is therefore affirmed.

By the Court: It is so ordered.

See under (1) 18 C. J. p. 828; (2) 18 C. J. p. 828; (3) 18 C. J. p. 828.